## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-63144-CV-ALTMAN

**RICHARD WRIGHT BEY**,

    *Plaintiff,*

v.

**KENNETH GOTTLIEB**, *et al.,*

    *Defendants.*

_____/

### ORDER

The Plaintiff did not pay the required fee when he filed his Complaint [ECF No. 1], so the Court must apply the screening provisions of 28 U.S.C. § 1915(e). *See Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

### THE FACTS

The Complaint is a shotgun pleading. It is, in fact, largely unintelligible. As best the Court can tell, the Plaintiff has brought a § 1983 action to redress what he says were unconstitutional actions by the police officers and "judicial assistants" who took part in his two (most recent) traffic-violation cases. *See* Compl. ¶ 13. As the Plaintiff has incorporated these public filings into his Complaint, the Court takes judicial notice of their dockets. *See Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (courts may take judicial notice of documents incorporated into complaint and matters of public record).

Both underlying state-court cases were filed against the Plaintiff (the Defendant in those cases) in Broward County Traffic Court. The first, 18020297TC40A, was dismissed on September 19, 2019. The second, 19023282TC10A, remains pending. The most recent filing in the second case refers to a February 18, 2020 Order in which the presiding judge recused himself. The charges

in that case include: (1) driving without a valid license; (2) driving an unregistered vehicle; (3) driving without insurance; and (4) driving without registration.

The Plaintiff describes the facts as follows. Sometime before April of 2019, he received a "notice to appear" for an April 1, 2019 hearing that was addressed to a "Richard Arvalis Wright." Compl. ¶ 14. According to the Plaintiff, however, his true name is "Richard Wright Bey." *Id*. ¶ 18. The Plaintiff therefore appeared at the April 1st hearing to clear up this discrepancy. *Id.* ¶ 14.

Eight days later, on April 9, 2019, he received a "notice of warrant" from the Broward County Sheriff's Office that, once again, was addressed to "Richard Arvalis Wright." *Id.* ¶¶ 14–16. On August 12, 2019, he mailed the Sheriff's Office an "affidavit," in which he asked the Sheriff to investigate an "unlawful warrant." *Id.* ¶ 15. He received no response. *See id.*

On September 13, 2019, the Plaintiff was pulled over for an unrelated incident by Officers Jorge Medina and Francis Anthony Japes. *Id.* ¶ 18. The Plaintiff was carrying a "National Identification Card" that was "private[ly] owned." *Id.* The officers told him that there was an open arrest warrant for him under the name "Richard Arvalis Wright." *Id.* The Plaintiff responded that his name was "Richard Wright Bey," not "Richard Arvalis Wright." *Id.* The officers arrested him anyway. *Id*. His truck was impounded, *id.* ¶ 19, and he was held for almost eight days, *id.* ¶ 21.

On September 19, 2019, the Plaintiff made his initial appearance and spoke with Kenneth Gottlieb, a "Judicial Assistant," who told him that, if he admitted to being Richard Arvalis Wright, his case would be dismissed. *Id.* ¶ 22. A few days later, he appeared before Mindy Solomon, a second "Judicial Assistant," and filed a motion to dismiss all charges. *Id.* ¶ 27. That motion was denied. *See id.* ¶ 28.

The Plaintiff, "Richard Wright Bey," with a listed address of "6838 SW 21st St., Miramar, FL, 33023," filed this lawsuit on December 23, 2019. *See generally id.* The Complaint asserts 41 different statutory and constitutional claims against eight defendants. *See id.* at 19–45.

But this was not the first complaint the Plaintiff has filed. On October 23, 2019, a "Richard Wright Bey" brought a declaratory-relief action in this Court based on the same September 13, 2019 arrest at issue here. *See Wright v. BaLuja*, No. 19-CV-62638-RUIZ [ECF No. 1] (S.D. Fla. Oct. 23, 2019). There, as here, the Plaintiff listed his address as "6838 SW 21st St., Miramar, FL, 33023." *Id.* Judge Ruiz dismissed that first complaint on October 29, 2019. *See id.* [ECF No. 11].

And, on May 28, 2019, a "Richard Arvalis Wright" filed a complaint in this Court. *See Wright v. State of Florida*, No. 19-CV-61323-RUIZ [ECF No. 1] (S.D. Fla. May 28, 2019). There, as here, the plaintiff listed his address as "6838 SW 21st St., Miramar, FL, 33023." *Id.* Judge Ruiz dismissed this complaint on August 27, 2019. *See id.* [ECF No. 11]. The Plaintiff maintains that he is not Richard Arvalis Wright. *See* Compl. ¶ 14.

## THE LAW

The Court may authorize a party to proceed *in forma pauperis* so long as the party complies with the prescriptions of 28 U.S.C. § 1915(a)(1). But the Court must screen such cases and dismiss a case if "the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

A "federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citations omitted). It is the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

## ANALYSIS

The Plaintiffs' claims fall into four categories: (1) violations of various criminal statutes,[1] *see* Compl. ¶¶ 50, 53, 54, 59, 60, 62, 64, 65, 66; (2) violations of the Oath of Office statute—5 U.S.C. § 3331—*see id.* ¶¶ 51, 57, 58, 61, 63, 67, 68, 71, 73, 76–78, 81, 84, 87, 88; (3) claims for specific relief, *see id.* ¶ 92; and (4) freestanding constitutional violations, *see id.* ¶¶ 52, 55–56, 69–70, 72, 74, 75, 79–80, 82, 83, 85–86, 89–91.

### I.  Shotgun Pleading

As a preliminary matter, the entire Complaint is subject to dismissal because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). To list but a few examples, it opines that, "[w]here rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them," Compl. at 12; suggests that, "[i]f any statement, within any law, which is passed, is unconstitutional, the whole law is unconstitutional," *id.* at 13; and insists: "It's a fact that you can't be force [sic] into a contract against your will or consent," *id.* at 14. But the Plaintiff has asserted no contract claim and does

---

[1] These categories are not entirely discrete. The Plaintiff, for instance, sometimes alleges a constitutional violation *within* a criminal count. *See, e.g.*, Compl. ¶ 61. But, when he does so, he always makes clear that the constitutional violation hinges on the criminal claim. *Id.* ("The plaintiff['s] freedom and liberty was taken away . . . because of Defendants [sic] actions which violated plaintiff of 18 USC [sic] 241 and 18 USC [sic] 242.").

4

not challenge the validity of any statute. These legal opinions are thus wholly "immaterial" to the issues in the case. *Weiland*, 792 F.3d at 1322.

Some of the Complaint's "counts" are also "vague" and unintelligible. Take, for example, Paragraph 59 (which comprises an entire count):

> 59. Defendant Brenda D. Forman has unlawful continued to demand plaintiff to answer for a capital without a crime against the plaintiff after showing facts of his 5th Amendment rights under US Constitution. Subjecting plaintiff for the same offence twice putting plaintiff in jeopardy of life and limb. Seconded attempt to bring the same charges which was dismiss under case No. 18020297TC40A and now active case under case No. 19023282TC10A. Violation of plaintiff 5th Amendment rights under the Constitution for United States of America. Brenda D. Forman has *conspired* with Kenneth A. Gottlieb and Michael J. Satz to cause harm which lead to the completion of kidnapping of plaintiff. The plaintiff freedom and liberty was taken away for 7days 16hours because of Defendants actions which violated plaintiff of 18 USC 241 and 18 USC 242.

Compl. ¶ 59. In this paragraph, the Plaintiff enunciates at least three different legal theories, identifies three defendants, and cites two state-court cases, two criminal statutes, and one constitutional amendment. Despite all this, the *nature* of the Plaintiff's claim—what he says actually happened—is entirely unclear.

The paragraph is also "conclusory." For instance, in describing his Fifth Amendment claim, the Plaintiff writes: "Violation of plaintiff 5th amendment rights under the Constitution for United States of America." He goes on to claim that two of the Defendants "conspired" against him—though he never explains *how* they conspired, *why* they conspired, or even *what* they conspired to do, let alone how that conspiracy injured him.[2]

---

[2] Note that the whole Complaint—all 45 pages of it—suffers from each of these defects. The Court has cited paragraph 59 at random and only because it is generally emblematic of the Complaint's glaring flaws. But nothing in this Order should be construed as suggesting that the balance of the Complaint comes anywhere near meeting the requirements of *Weiland* or, for that matter, § 1915(a).

5

The Complaint is also redundant. As an example, although only eight defendants have been sued, the Complaint alleges *sixteen* violations of the Oath of Office statute. *See id*. ¶¶ 51, 57, 58, 61, 63, 67, 68, 71, 73, 76, 77, 78, 81, 84, 87, 88. Even if the violation of the Oath of Office statute could state a cause of action—which, as discussed below, it cannot—*eight* defendants, each having taken the oath only once, could not have violated the statute *sixteen* times.

The Complaint, in short, is a shotgun pleading and must be dismissed. *See Weiland*, 792 F.3d at 1322. For the Plaintiff's benefit, though, the Court will address some of its many other deficiencies.

## II.    *Younger* Abstention

The Complaint's allegations all arise from constitutional and statutory violations that—the Plaintiff says—have tainted his pending, state-court criminal case. But a federal court may not enjoin, or interfere with, an ongoing state-court criminal case. *See Younger v. Harris*, 401 U.S. 37 (1971); *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364 (1989) ("[A]bsent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions."). Because the Plaintiff has not even attempted to show that such "extraordinary circumstances" are present here, his claims fail under the *Younger* abstention doctrine.

## III.    Violations of Criminal Statutes

As the Court has noted, many of the Complaint's counts allege violations of criminal statutes. *See* Compl. ¶¶ 50, 53, 54, 59, 60, 62, 64, 65, 66 (claiming violations of 18 U.S.C. §§ 241–242, 18 U.S.C. § 1001, and 18 U.S.C. § 1341). But these statutes do not provide *civil* plaintiffs with private rights of action. *See Hoffman v. Office of State Attorney*, 793 F. App'x 945, 948 n.1 (11th Cir. 2019) ("18 U.S.C. §§ 241 and 242 . . . 'are criminal in nature and provide no civil remedies.'" (citation omitted)); *Crosson v. LaSalle Bank, N.A.*, 2009 WL 10711904, at *14 (N.D.

Ga. Aug. 7, 2009) ("[C]ourts have determined that 18 U.S.C. § 1001 does not provide a private right of action." (citing *AirTrans, Inc. v. Mead*, 389 F.3d 594, 597 n.1 (6th Cir. 2004)); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977) ("[Fifth Circuit precedent] forecloses any such claim of a private right of action under [18 U.S.C. § 1001].").[3] For this reason, any claim that alleges a violation of a criminal statute, *see* Compl. ¶¶ 50, 53, 54, 59, 60, 62, 64, 65, 66, must be dismissed.

### IV.   Violations of the Oath of Office Statute

Similarly, the Oath of Office statute requires only that federal officers take an "oath of office." 5 U.S.C. § 3331. It does not create a private right of action. *See, e.g.*, *Smith v. United States*, 2013 WL 2154004, at *1 (D. Mass. May 15, 2013) (finding that 5 U.S.C. § 3331 does not "give rise to a private right of action in a civil context"). Thus, any claims that allege violations of the Oath of Office statute, *see* Compl. ¶¶ 51, 57, 58, 61, 63, 67, 68, 71, 73, 76, 77, 78, 81, 84, 87, 88, must be dismissed.

### V.   Prayer for Specific Relief

The Plaintiff's Prayer for Specific Relief similarly fails. Here, the Plaintiff says only that he "has and will be irreparably injured by the conduct of the defendants unless the court grants declaratory or injunctive relief." *Id*. ¶ 92. But the Plaintiff never explains *how* he has been irreparably harmed. Even the liberal pleading standard afforded to *pro se* litigants "does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

---

[3] Decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

More fundamentally, the Prayer for Specific Relief must be dismissed for lack of standing. The Plaintiff seeks an injunction that would prevent the Defendants from ever violating his Fourth and Fifth Amendment rights again. *See* Compl. ¶ 95(a)–(c). But, to have standing to prevent a *future* injury, a plaintiff must demonstrate "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Put simply, a plaintiff must show some likelihood that, but for the Court's intervention, he will be subjected to the same unlawful—and injurious—course of conduct in the future. In this respect, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

But the Complaint never alleges—and does not give reason to believe—that the Plaintiff is likely to suffer in the future the same constitutional violations he says have taken place in the past. Thus, to the extent that the Prayer for Specific Relief seeks an injunction against the Defendants, it must be dismissed for lack of subject-matter jurisdiction.

## VI.     Freestanding Constitutional Violations

Finally, the Plaintiff avers that the Defendants violated his rights under the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Amendments to the U.S. Constitution. The Court will address these claims in reverse order.

### a.   The Ninth Amendment

The Plaintiff contends that his unenumerated rights—protected by the Ninth Amendment—were violated when: (1) his truck was pulled over, *see* Compl. ¶ 69; (2) he was asked for his license and registration, *see id.* ¶ 74; (3) he was handcuffed, *see id.* ¶ 80; (4) his truck was searched without a warrant, *see id.* ¶ 83; and (5) he was transported to the local jail, *see id.* ¶

91. In a nutshell, the Plaintiff suggests that he has an unenumerated right not to be stopped or arrested. But this right—if it exists—is not protected by the Ninth Amendment. It is the "Fourth Amendment [that] protects 'against unreasonable searches and seizures' of (among other things) the person." *Virginia v. Moore*, 553 U.S. 164, 168 (2008) (citation omitted). The Complaint's Ninth Amendment claims must therefore be dismissed.

### b. The Eighth Amendment

The Plaintiff argues that some of the Defendants violated his Eighth Amendment rights when they transported him to the Broward County Jail. *See* Compl. ¶ 90. In this allegation, he makes clear, however, that the transportation violated the Constitution only because *his initial arrest* was unlawful. *See id.* As with his Ninth Amendment claim, then, this claim must be raised under the rubric of the Fourth Amendment. As such, the Complaint's Eighth Amendment claim must be dismissed.

### c. The Seventh Amendment

The Plaintiff also avers that his Seventh Amendment right to a trial by jury was violated when (1) he was forced to participate in his arraignment, and (2) his request for a jury trial was denied. *See id*. ¶ 55. But the Seventh Amendment guarantees the right to a jury trial in *civil*—not criminal—cases. *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 80 (1989). Because the Plaintiff's jury-trial rights were infringed—if they were infringed at all—in a *criminal* case, he must plead this claim under the auspices of the Sixth Amendment. His Seventh Amendment claim, therefore, must be dismissed.

### d. The Sixth Amendment

The Plaintiff's Sixth Amendment claim, *see* Compl. ¶ 56, fails for an entirely separate reason. As noted, *see supra* at 1, the Plaintiff's underlying, state-court case was filed in *traffic*

*court*. The charges levied against him are: (1) driving without a license, (2) driving without registration, and (3) driving without insurance. But most municipal traffic offenses do not trigger the Sixth Amendment right to a trial by jury. *See State v. Webb*, 335 So. 2d 826, 828 (Fla. 1976) (citing *Baldwin v. New York*, 399 U.S. 66 (1970), and *Duncan v. Louisiana*, 391 U.S. 145 (1968)). Thus, if the Plaintiff does choose to refile his case, he must make clear which of his claims entitle him to a jury trial.

### e. The Fifth Amendment

The Plaintiff says that his Fifth Amendment rights were violated when: (1) he was charged with the same traffic violation twice, *see* Compl. ¶ 52; (2) a police officer, after pulling him over, asked for his license and registration, *see id.* ¶ 72; (3) he was not "immediately" taken to a magistrate judge, *id.* ¶ 79; (4) his car was searched, *see id.* ¶ 82; and (5) his car, following his arrest, was impounded, *see id.* ¶ 85. But only the first of these allegations—that the State violated his rights under the Double Jeopardy Clause—arises under the Fifth Amendment. The rest must be re-constituted as Fourth Amendment violations.

Nevertheless, the Plaintiff mischaracterizes the Double Jeopardy Clause, which prevents an individual from being *tried* twice for the same offense. It does not prevent an individual from *committing* the same offense twice. And, by the Plaintiff's own admission, he was arrested for driving without a license on two separate occasions. *See id*. ¶ 13 (citing state-court dockets). This claim, therefore, fails to state a claim and must likewise be dismissed.

### f. The Fourth Amendment

The Plaintiff alleges that the Defendants violated his Fourth Amendment rights when they: (1) pulled him over, *see id*. ¶ 69; (2) asked for his license and registration, *see id*. ¶¶ 72, 74; (3) handcuffed him, *see id.* ¶ 80; (4) searched his truck without a warrant, *see id.* ¶ 83; (5) transported

him to the local jail, *see id.* ¶ 91; (6) arrested him without a warrant, *see id.* ¶ 75; (7) arrested him for crimes committed by Richard Arvalis Wright, *see id.* ¶¶ 14–18; (8) did not "immediately" take him to a magistrate judge, *id.* ¶ 79; and (9) impounded his truck, *see id.* ¶ 85.

Normally, at this stage of the litigation, the Court must "assume the factual allegations in the complaint are true and give the plaintiff the benefit of reasonable factual inferences." *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Notably, however, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)).

Here, the Plaintiff's own allegations make clear that he was pulled over for driving with expired tags. *See* Compl. ¶ 17. A police officer may stop a vehicle "[w]hen there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations." *Delaware v. Prouse*, 440 U.S. 648, 661 (1979). Based on the Plaintiff's own allegations, there was nothing unlawful about the initial traffic stop. *See Perry v. Greene Cnty., Ga.*, 392 F. App'x 761, 764 (11th Cir. 2010) (officers had "arguable probable cause" when they stopped the plaintiff for driving with an obscured license plate—which, if true, would have violated Georgia law); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed."); *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (in determining whether the officers had "arguable probable cause," courts ask only "whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation"). Because a "non-criminal traffic infraction can provide a basis

to perform a lawful traffic stop," the Plaintiff's concession that he was driving a truck with expired tags eviscerates his illegal-stop claim under the Fourth Amendment. *See Harris v. Rambosk*, 2019 WL 5722080, at *13 (M.D. Fla. Nov. 5, 2019) (because a "non-criminal traffic infraction provides basis to perform a lawful traffic stop," officer's observation of vehicle in non-compliance with Florida's traffic statute provided probable cause to stop him).

The Plaintiff also admits that he was driving without a valid driver's license. *See* Compl ¶¶ 17–18. "Probable cause to arrest exists when a police officer has a reasonable belief that a suspect committed or was committing a crime, based upon facts and circumstances within his knowledge," *United States v. Gardner*, 444 F. App'x 361, 364 (11th Cir. 2011). And driving without a valid driver's license is a crime under Florida law. *See* Fla. Stat. § 322.03. Based on the Plaintiff's own allegations, then, the officers had probable cause to arrest him. Indeed, as the Eleventh Circuit has explained, a plaintiff is not entitled to sustain a claim against an officer for unlawful arrest if, in similar circumstances, a reasonable officer *could* have believed that there was probable cause to make the arrest. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993) (officer was entitled to qualified immunity because he had "arguable probable cause" to arrest plaintiff who kept talking after he was instructed to be quiet); *accord Redlich v. Leen*, No. 16-CIV-20001, 2016 WL 3670575, at *12 (S.D. Fla. May 20, 2016) (plaintiff's failure to comply with officer's request to produce license after traffic stop gave officers probable cause to arrest for violation of Fla. Stat. § 843.02); *Ryder v. Andrews*, 2016 WL 9503729, at *6 (M.D. Fla. June 22, 2016) (officer had probable cause to arrest plaintiff for violation of Fla. Stat. § 843.02 where, "instead of simply providing his license and registration," plaintiff repeatedly asked officer why he was stopped); *see also Am. Dental Ass'n*, 605 F.3d at 1290 (court may look to obvious alternative explanations for police conduct). Nor is there anything even remotely unconstitutional about a state law that

authorizes an officer to arrest a man who, during a valid traffic stop, failed to provide his name or identification. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 188–89 (2004) (state law authorizing officers to request name or identification during valid traffic stops, and to arrest persons who fail to comply with those requests, consistent with Fourth Amendment).

In addition, the Plaintiff's state-court docket establishes that he was taken before a magistrate judge less than 24 hours after being arrested. *Compare State v. Wright*, No. 19023282TC10A ("Arrest Paperwork") (Sept. 14, 2019) *with id.* ("Magistrate Findings") (Sept. 14, 2019.  This more than satisfies any "presentation" rights he might have had.

Moreover, "a warrantless inventory search of a legally impounded car conducted pursuant to an established procedure is valid under the [Constitution]." *United States v. Crawford*, 294 F. App'x 466, 472 (11th Cir. 2008). Thus, if the Plaintiff does file another complaint, he must explain how the impounding of his truck violated the Broward County Sheriff's Office's normal procedures for impounding vehicles.

Lastly, in his Complaint, the Plaintiff claims that the Defendants' search of "the plaintiff's private truck without a search warrant is unlawful because there was no crime committed and no injured party." Compl. ¶¶ 81, 82, 83. This sentence is both false and conclusory. It is false because, as already noted, the Plaintiff admits to committing the crimes of (1) driving without a license and (2) driving without valid registration. And it is conclusory because it provides no factual detail from which the Court can ascertain whether the search was lawful. It simply states that the search *was* unlawful. This is a bare legal conclusion. As the Supreme Court has made plain, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679. If the Plaintiff elects to file another complaint, he must explain how the officers' search violated the test the Supreme Court enunciated in *Arizona v. Gant*, 556 U.S. 332 (2009).

***

The Court is dismissing the Complaint *without prejudice*. This means that the Plaintiff may file a new Complaint in this Court if he wants to. But, if he does, he must follow the admonitions laid out in this Order. Otherwise, his next Complaint may be dismissed for good.

For the foregoing reasons, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. This case is **DISMISSED without prejudice.**

2. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED as moot**.

3. The Clerk of Court is directed to list cases 19-CV-63144-RKA, 19-CV-62638-RAR, and 19-CV-61323-RAR as related cases on any future filing by the Plaintiff, "Richard Wright," who resides at "6838 SW 21st St., Miramar, FL, 33023."

**DONE AND ORDERED** in Fort Lauderdale, Florida this 30th day of March 2020.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Richard Wright, *pro se*